(December 31, 1914.)

## STATE, to and for the Use and Benefit of CLARA MILLS et al., Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

[145 Pac. 1097.]

OFFICIAL BOND—ACTION ON—DEFAULT — JURISDICTION—REMOVAL OF CAUSE—VACATION OF DEFAULT — COMPLAINT — SUFFICIENCY OF COMPLAINT—STATUTORY CONSTRUCTION—PUBLIC OFFICER—BREACH OF DUTY—LIABILITY OF SURETY—PARTIES TO ACTION.

1. Where a defendant has been sued in a state court and summons has been served upon him, and, prior to the expiration of the term within which he is required to answer under the statute and without appearing or answering, he files a petition for a removal to the federal court, and an order denying the removal is made by the state court, and the record is thereafter transferred by the defendant to the federal court, when on motion in the latter court the cause is remanded to the state court for want of jurisdiction in the federal court, and the clerk of the district court enters the default of the defendant for failure to appear and answer; *held,* that the action of the clerk in entering the default of the defendant is regular and valid, and within the authority and direction of secs. 4140 and 4360, Rev. Codes, and that such default is not void for want of jurisdiction.

2. Where the default has been entered by the clerk against the defendant, as was done in this case, the court has jurisdiction to hear the proofs submitted by the plaintiff and to enter judgment thereon.

3. Under the above facts, where the defendant moves to have the default vacated on the ground of inadvertence, surprise or excusable neglect, *held,* that under the excuse presented and the facts of this case, as shown by the record, the trial court did not err in refusing to set aside said default.

4. Sec. 4140, Rev. Codes, fixes the time within which a defendant shall appear and answer, and the fact that prior to the expiration of that time the defendant undertook to have the cause removed to the federal court and it was thereafter remanded, such action on the part of the defendant to change the forum will not serve to extend the time for answer in the state court and will not relieve the defendant from a default which it thus allows to be entered against it.

5. The filing of a petition and bond for a removal to the federal court is not an appearance in the state court, under the provisions of the Revised Codes of Idaho.

6. When a defendant attempts to remove an action which he is not entitled to remove, and the state court refuses to surrender its jurisdiction, the state court may proceed with the cause and its subsequent proceedings are valid.

7. *Held,* under the facts of this case, that the default was not prematurely entered.

8. The legislature in enacting sec. 3001, Rev. Codes, making it the duty of the bank commissioner to make an examination of state banks, imposed such duty for the benefit and protection of the depositors as well as the public.

9. A bank commissioner in the exercise of discretionary duties is not responsible to anyone receiving an injury through a breach of his official duty, unless he acts maliciously and wilfully wrong, or clearly abuses his discretion to the extent of acting unfaithfully and in bad faith.

10. In an action by an injured party against the surety on the bond of the bank commissioner executed under sec. 191, Rev. Codes, for failure of said commissioner to faithfully perform his duty, it is not necessary to first proceed and have the damages of the injured party adjudged against the commissioner.

11. Under a joint and several bond executed pursuant to sec. 191, Rev. Codes, it is not necessary to sue jointly the principal and surety, but suit may be maintained against either severally.

12. *Held,* that the complaint herein states a cause of action.

APPEAL from the District Court of the Fourth Judicial District for Blaine County.   Hon. Edward A. Walters, Judge.

Action by the state to recover on a surety company's bond. Judgment for the plaintiff.   Judgment *affirmed.*

Richards & Haga and McKeen F. Morrow, for Appellant.

When a citizen of another state files a petition and bond in due form and gives the required notice for the removal of a cause to the federal court on the ground of diversity of citizenship, the time within which defendant must plead further is governed by federal law.   (Sec. 29, The Judicial Code.)

The attempt of state courts to exercise jurisdiction over causes after the federal court assumed jurisdiction, or while

the federal court has the question of its jurisdiction under consideration, has been condemned repeatedly by the higher courts. (*Ches. & Ohio Ry. Co. v. McCabe,* 213 U. S. 207, 29 Sup. Ct. 430, 53 L. ed. 766; *Coeur d'Alene Ry. & Nav. Co. v. Spalding,* 6 Ida. 97, 53 Pac. 107; Dillon, Removal of Causes, 5th ed., p. 158.)

The petition for removal and the accompanying motion or application for an order of removal constitute appearance and pleading within the meaning and intent of the state law governing the authority of the clerk to enter default, and no default can be entered by the clerk until the petition has been finally denied or overruled. (*Mattoon v. Hinkley,* 33 Ill. 208; *State v. Gittings,* 35 Md. 169; *Osprey v. Jenkins,* 9 Mo. 643; *Atchison T. & S. F. Ry. Co. v. Lambert,* 31 Okl. 300, Ann. Cas. 1913E, 329, 121 Pac. 654; 6 Ency. Pl. & Pr. 93; 23 Cyc. 757.)

The petition for removal is a plea to the jurisdiction of the court, and in overruling a petition or motion for the removal of a cause the rule of *respondeat ouster* obtains, and the order should be that defendant plead further within the time fixed by the court, and until the expiration of such time no default can be entered against defendant. (*Kelly v. Van Austin,* 17 Cal. 564; *Reinhart v. Lugo,* 86 Cal. 395, 21 Am. St. 52, 24 Pac. 1089; 6 Ency. Pl. & Pr. 80; 1 Black on Judgments, 2d ed., sec. 13; 1 Freeman on Judgments, 4th ed., sec. 7; *Trow v. Messer,* 32 N. H. 361; *Cooke v. Crawford,* 1 Tex. 9, 46 Am. Dec. 93; *Robb v. Parker,* 4 Heisk. (Tenn.) 58; *Kamp v. Bartlett,* 164 Ill. App. 338.)

A simple default should be vacated in furtherance of justice and on such terms as may be proper. (*McFarlane v. McFarlane,* 45 Or. 360, 77 Pac. 837; *Hall v. McCan,* 62 Or. 556, 126 Pac. 5; *Cutler v. Haycock,* 32 Utah, 354, 90 Pac. 897; *Melde v. Reynolds,* 129 Cal. 308, 61 Pac. 932; *Greene v. Montana Brewing Co.,* 32 Mont. 102, 79 Pac. 693; *Staley v. O'Day,* 22 Cal. App. 149, 133 Pac. 620; *Douglas v. Badger State Mine,* 41 Wash. 266, 83 Pac. 178, 4 L. R. A., N. S., 196.)

The application for vacating the default entered against defendant shows both mistake, inadvertence, surprise and excusable neglect, and the trial court erroneously assumed it had

no discretion in the matter. Statutes should be liberally construed with the view to determining causes on the merits. (Rev. Codes, secs. 4, 4225, 4226, 4228, 4229 and 4231; *Shreve v. Cheesman,* 69 Fed. 785, 16 C. C. A. 413; *Flagg v. Puterbaugh,* 98 Cal. 134, 32 Pac. 863; *Smith* v. *Whittier,* 95 Cal. 279, 30 Pac. 529; *Wallace v. Okolona Savings' Inst. Co.,* 49 Miss. 616, 620.)

The cause was removable to the federal court, and an order should have been made transferring it. (*Ex parte Nebraska,* 209 U. S. 436, 28 Sup. Ct. 581, 52 L. ed. 876; *Troy Bank v. Whitehead & Co.,* 222 U. S. 39, 32 Sup. Ct. 9, 56 L. ed. 81; *Illinois Central R. Co. v. Adams,* 180 U. S. 28, 21 Sup. Ct. 251, 45 L. ed. 410.)

The liability of the surety on this bond does not extend to the general public depositing money in the banks of the state. (Ida. Rev. Codes, secs. 191, 194, 3000, 3001, 3003, 3005 and 3004.) Sec. 191, Rev. Codes, requires all damages against the bank commissioner to be adjudged against such bank commissioner before the surety of such commissioner can be held liable. (*Umbreit v. American Bonding Co.,* 144 Wis. 611, 129 N. W. 789; *Western Assurance Co. v. Klein,* 48 Neb. 904, 67 N. W. 873; *Blaufus v. People,* 69 N. Y. 107, 25 Am. Rep. 148; *Webb v. Bidwell,* 15 Minn. 484; *United States v. Irwin,* 127 U. S. 125, 8 Sup. Ct. 1033, 32 L. ed. 99; *Sans v. City of New York,* 31 Misc. Rep. 559, 64 N. Y. Supp. 681; *New Orleans Nat. Banking Assn. v. Adams,* 3 Woods, 21, Fed. Cas. No. 10,184; *Brownell v. Greenwich,* 44 Hun (N. Y.), 611, 8 N. Y. St. Rep. 6; *Wirt v. Peck,* 184 Fed. 54, 107 C. C. A. 16; *Tyler Min. Co. v. Last Chance Min. Co.,* 90 Fed. 15, 32 C. C. A. 498; *Browning v. Porter,* 12 Fed. 460, 2 McCrary, 581.) Sec. 3005 imposes unusually severe penalties on the commissioner if he proceeds against a bank without reasonable cause. In view of such penalties a very strong showing should be required before any court would be justified in holding the commissioner liable for an abuse of discretion in failing to close a bank. (*Reed v. Conway,* 20 Mo. 22; *Jenkins v. Waldron,* 11 Johns. (N. Y.) 114, 6 Am. Dec. 359.)

On official bonds there can be no liability and no recovery without malice alleged and proved. (*Wheeler v. Patterson,* 1 N. H. 88, 8 Am. Dec. 41; *Weaver v. Devendorf,* 3 Denio (N. Y.), 120; *Wilson v. Mayor,* 1 Denio (N. Y.), 599, 43 Am. Dec. 719; *Venderheyden v. Young,* 11 Johns. (N. Y.) 160; *State v. Chadwick,* 10 Or. 465.)

The duties of the bank commissioner under sec. 3005, Rev. Codes, are not ministerial. They are of a highly discretionary character. (*State ex rel. Irvine v. Brooks,* 14 Wyo. 393, 84 Pac. 488, 7 Ann. Cas. 1108, 6 L. R. A., N. S., 750.)

The official is not liable in damages for either error of judgment, incompetency or mistakes of law or fact. (*Hoke v. Henderson,* 15 N. C. 1, 25 Am. Dec. 677; *Edwards v. United States,* 103 U. S. 471, 26 L. ed. 314; *United States v. McClane,* 74 Fed. 153; *Gould v. Hammond,* 10 Fed. Cas. No. 5636; *Pratt v. Gardner,* 2 Cush. (Mass.) 63, 48 Am. Dec. 652; *Stone v. Graves,* 8 Mo. 148, 40 Am. Dec. 131; *Rains v. Simpson,* 50 Tex. 495, 32 Am. Rep. 609; *Spalding v. Vilas,* 161 U. S. 483, 16 Sup. Ct. 631, 40 L. ed. 780.)

J. H. Peterson, Attorney General, for the State, and Sullivan & Sullivan, for Respondent.

Default cannot be set aside by reason of mistake of law. (1 Black on Judgments, secs. 335, 340a; Freeman on Judgments, secs. 58, 508; 17 Am. & Eng. Ency. Law, 831, 833; 6 Ency. Pl. & Pr. 167; 23 Cyc. 938, 939; *Smith v. Pelton Water Wheel Co.,* 151 Cal. 394, 90 Pac. 934; *Allen v. Continental Ins. Co.,* 97 Ill. App. 164; *Keenan v. Daniells,* 18 S. D. 102, 99 N. W. 853; *Plano Mfg. Co. v. Murphy,* 16 S. D. 380, 102 Am. St. 692, 92 N. W. 1072; *McDaniels v. Bank of Rutland,* 29 Vt. 230, 70 Am. Dec. 406, 412; *Phifer v. Travelers' Ins. Co.,* 123 N. C. 405, 31 S. E. 715.)

There can be no relief against mistake of law. (*Wilmerding v. Corbin Banking Co.,* 126 Ala. 268, 28 So. 640; *Early v. Bard,* 93 App. Div. 476, 87 N. Y. Supp. 650; *City of Noblesville v. Noblesville Gas etc. Co.,* 157 Ind. 162, 60 N. E. 1032; *Mouser v. Harmon,* 96 Ky. 591, 29 S. W. 448; *Cox v. Arm-*

*strong* (Ky.), 43 S. W. 189; *Mantle v. Casey,* 31 Mont. 408, 78 Pac. 591; *Donlan v. Thompson Falls Copper etc. Co.,* 42 Mont. 257, 112 Pac. 445; *Willoburn Ranch Co. v. Yegen,* 45 Mont. 254, 122 Pac. 915.)    The early decisions of California, under a statute identical with ours, should be followed in construing the word "mistake" in sec. 4229, Rev. Codes.    (*Chase v. Swain,* 9 Cal. 130; *People v. Rains,* 23 Cal. 128.)

This court in *Morbeck v. Bradford-Kennedy Co.,* 19 Ida. 83, 113 Pac. 89, has passed upon this question of a "mistake of law" not being sufficient to set aside a default.    (See, also, *Donovan v. Miller,* 12 Ida. 600, 88 Pac. 82, 10 Ann. Cas. 444, 9 L. R. A., N. S., 524.)

Under sec. 4229, to set aside simple default, it is necessary to show mistake, inadvertence, surprise or excusable neglect.

"If on the face of the record, including the petition for removal of a cause, the suit does not appear to be a removable one, the state court is not bound to surrender jurisdiction, but may proceed as if no application for removal had been made." (*Missouri K. & T. Ry. Co. v. Chappell,* 206 Fed. 688; *Phoenix Ins. Co. v. Pechner,* 95 U. S. 183, 24 L. ed. 427; *Yulee v. Vose,* 99 U. S. 539, 25 L. ed. 355; *Kern v. Huidekoper,* 103 U. S. 485, 26 L. ed. 354; *Gregory v. Hartley,* 113 U. S. 742, 5 Sup. Ct. 743, 28 L. ed. 1150; *Stone v. South Carolina,* 117 U. S. 430, 6 Sup. Ct. 799, 29 L. ed. 962, 963; *Crehore v. Ohio etc. Ry. Co.,* 131 U. S. 240, 9 Sup. Ct. 692, 33 L. ed. 144, 145; *Chesapeake & O. Ry. Co. v. McCabe,* 213 U. S. 207, 29 Sup. Ct. 430, 53 L. ed. 765; *Springer v. Howes,* 69 Fed. 849; *Monroe v. Williamson,* 81 Fed. 977, 984; *Eisenmann v. Delemar's Nevada Gold Min. Co.,* 87 Fed. 248; *Fife v. Whittell,* 102 Fed. 537; *Dalton v. Milwaukee M. Ins. Co.,* 118 Fed. 881; *McAlister v. Chesapeake & O. Ry. Co.,* 157 Fed. 740, 85 C. C. A. 316, 13 Ann. Cas. 1068; *Phillips v. Western Terra Cotta Co.,* 174 Fed. 873; *Mannington v. Hocking Val. Ry. Co.,* 183 Fed. 133; *Stevenson v. Illinois Cent. R. Co.,* 192 Fed. 956; *Hansford v. Stone-Ordean-Wells Co.,* 201 Fed. 185; *Texas & P. Ry. Co. v. McAllister,* 59 Tex. 349; *McWhinney v. Brinker,* 64 Ind. 360; *Illinois Cent. R. R. Co. v. Le Blanc,* 74 Miss. 626, 21 So. 748; *Hickman v. Missouri etc. Ry. Co.,* 151 Mo. 644, 52 S. W.

351; *White v. Holt,* 20 W. Va. 792; *Hayes v. Todd,* 34 Fla. 233, 15 So. 752; *Western Union Tel. Co. v. Griffith,* 104 Ga. 56, 30 S. E. 420; *Bixby v. Blair,* 56 Iowa, 416, 9 N. W. 318; *Stone v. Sargent,* 129 Mass. 503, 510; *Howard v. Southern Ry. Co.,* 122 N. C. 944, 29 S. E. 778; *Howard v. Stewart,* 34 Neb. 765, 52 N. W. 714; *Southern Pac. R. Co. v. Superior Court,* 63 Cal. 607, 612; *Knott v. McGilvray,* 124 Cal. 128, 56 Pac. 789; *Golden v. Northern Pac. Ry. Co.,* 39 Mont. 435, 104 Pac. 549, 18 Ann. Cas. 886, 34 L. R. A., N. S., 1154; *Debnam v. Southern Bell Tel. etc. Co.,* 126 N. C. 831, 36 S. E. 269, 65 L. R. A. 915; *Western Coal & Min. Co. v. Osborne,* 30 Okl. 235, 119 Pac. 973; *Chicago etc. Ry. Co. v. Brazzell,* 33 Okl. 122, 124 Pac. 40; Black's Dillon, Removal of Causes, secs. 190, 191; Faust on Federal Procedure, 579; Moon's Removal of Causes, sec. 177; 2 Foster's Fed. Prac., sec. 391; 2 Rose's Code of Fed. Prac., sec. 1138 (e), (g); 10 Ency. of U. S. Sup. Ct. Reps. 704, 705; 18 Ency. Pl. & Pr. 338, 351; 34 Cyc. 1305, 1308; A Federal Equity Suit (Simkins), 806; *Coeur d'Alene Ry. etc. Co. v. Spalding,* 6 Ida. 97, 53 Pac. 107.)

"If a litigant desires to have a cause removed from the state court to the United States court, he has the right to have it so removed if he has sufficient grounds therefor; but if he has not sufficient grounds, and undertakes to secure a removal and fails, he must take the consequences." (*Finney v. American Bonding Co.,* 13 Ida. 534, 90 Pac. 859, 91 Pac. 318; *Mills v. American Bonding Co.,* 13 Ida. 556, 91 Pac. 381.)

The rule under the cases cited by appellant, where individuals are sureties, does not apply to companies engaged in the surety business for hire. (23 Am. & Eng. Ann. Cas. 1087; *Atlantic Trust etc. Co. v. Laurinburg,* 163 Fed. 690, 90 C. C. A. 274; *American Surety Co. v. Pauly,* 170 U. S. 133, 18 Sup. Ct. 552, 42 L. ed. 977; *Hull v. Massachusetts etc. Ins. Co.,* 86 Kan. 342, 120 Pac. 544; *Rule v. Anderson,* 160 Mo. App. 347, 142 S. W. 358.)

"In an action on a joint and several bond, all or any of the sureties may be sued." (*State v. McDonald,* 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312.)

The amendment to sec. 29 of the New Judicial Code does not contemplate that the state court must accept a petition for removal, sufficient or insufficient, but the procedure remains the same. (*Goins v. Southern Pac. Co.,* 198 Fed. 432; *Hansford v. Stone-Ordean-Wells Co.,* 201 Fed. 185; *United States v. Sessions,* 205 Fed. 502, 123 C. C. A. 570; *Missouri K. & T. Ry. Co. v. Chappell,* 206 Fed. 688; *Loland v. Northwest S. Co.,* 209 Fed. 626; *Wanner v. Bissinger & Co.,* 210 Fed. 96; *Johnson v. Butte etc. Copper Co.,* 213 Fed. 910; 2 Foster's Fed. Prac., p. 1829, note.)

W. B. Davidson and Wm. C. Bristol, *Amici Curiae.*

An individual has no right of action against a public officer for breach of duty owing to the public only, even though such individual is specially injured thereby. (*Gorman v. Commissioners,* 1 Ida. 655; *Worden v. Witt,* 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *People v. Hoag,* 54 Colo. 542, 131 Pac. 400, 45 L. R. A., N. S., 824; *Miller v. Ouray E. L. & Power Co.,* 18 Colo. App. 131, 70 Pac. 447; *Colorado Paving Co. v. Murphy,* 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630; *Ryus v. Gruble,* 31 Kan. 767, 3 Pac. 518; *State v. Harris,* 89 Ind. 363, 46 Am. Rep. 169; *Moss v. Cummings,* 44 Mich. 359, 6 N. W. 843; *School District No. 80 v. Burress,* 2 Neb. Unof. 554, 89 N. W. 609; *Board v. Bladen,* 113 N. C. 379, 18 S. E. 661; *Lowe v. Guthrie,* 4 Okl. 287, 44 Pac. 198; *Dysart v. Lurty,* 3 Okl. 601, 41 Pac. 724; *McPhee v. United States Fidelity etc. Co.,* 52 Wash. 154, 132 Am. St. 958, 100 Pac. 174, 21 L. R. A., N. S., 535; *Foster v. Malberg,* 119 Minn. 168, Ann. Cas. 1914A, 1116, 137 N. W. 816; *Cottam v. Oregon City,* 98 Fed. 570; *South v. Maryland,* 18 How. (U. S.) 396, 15 L. ed. 433.)

TRUITT, J.—This action was brought by the state of Idaho for the use and benefit of fifty-five depositors, or their assignees, in the Idaho State Bank at Hailey against the American Surety Company of New York as surety on the bond of William G. Cruse, former bank commissioner of the state of Idaho, for the failure of said Cruse to faithfully discharge the duties of his office. Said depositors are among those who

made deposits during the last four months the bank was open, and subsequent to the time said Cruse had knowledge of its unsafe and insolvent condition and subsequent to May 12, 1910, which latter date was one year after said bank commissioner's last examination of said bank.

It is not claimed in this action that the deposits of these depositors or other depositors prior to May 12, 1910, could be recovered.   On May 15, 1909, a bond was executed by said William G. Cruse, as principal, and the American Surety Company of New York, as surety, as required by sec. 191, Rev. Codes, conditioned as follows:

"Now, therefore, if the said William G. Cruse shall well, faithfully and impartially discharge the duties of his office and pay over to the person entitled by law to receive it, all money coming into his hands by virtue of his office, and that he will pay any and all damages and costs that may be urged against him, under the provisions of chap. 12, title 2, Political Code, and chap. 13, title 4, of the Civil Code of Idaho, and shall well and truly perform all the duties of such office required by any law to be enacted subsequent to the execution of this bond, then this obligation to be void, otherwise to remain in full force and effect."

The plaintiff to and for the use of certain parties claims the right to bring this action under sec. 295, Rev. Codes, which is as follows:

"Every official bond executed by any officer pursuant to law, is in force and obligatory upon the principal and sureties therein to and for the state of Idaho, and to and for the use and benefit of all persons who may be injured or aggrieved by the wrongful act or default of such officer in his official capacity, and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof."

It is alleged in the complaint that on August 31, 1910, the Idaho State Bank of Hailey closed its doors and suspended payment and had been unable to meet the demands of its creditors and has been in the hands of a receiver ever since; that William G. Cruse was appointed state bank commissioner

on March 6, 1909; that said Cruse and the American Surety Co. executed a bond conditioned as required by said sec. 191, Rev. Codes.

The 7th and 8th paragraphs of said complaint are as follows:

"VII. That, under the provisions of chap. 12, title 4 of the Civil Code of Idaho, it was, among other things, provided that it shall be the duty of the bank commissioner, when he shall deem it necessary, and at least once in each year, without previous notice, to visit and make complete report and examination of the affairs of each bank falling within the provisions of said chapter, which included the said Idaho State Bank.

"VIII. That, notwithstanding the obligations of said bond, the said William G. Cruse, after the making of said bond and during and before the expiration of his said office, as aforesaid, did not well, faithfully, and impartially discharge the duties of his said office, according to law and the provisions of said chapter, nor did he observe, fulfill and perform the said conditions of said bond, but, on the contrary, he wholly failed, neglected, omitted and refused so to do, and acted unfaithfully, improperly and illegally in this:

"First, That said W. G. Cruse did not, at least once in each year during his said term of office, without notice, visit and make a complete report and examination of the affairs of said bank, as he made an examination on the 12th day of May, 1909, and did not thereafter visit and make another examination thereof until the 31st day of August, 1910, the day he caused said bank to close its doors and suspend payment;

"Second, That, further, on or about the 12th day of May, 1910, and for some time prior thereto, said William G. Cruse had knowledge of the unsafe condition of said bank, and that the same was being conducted contrary to the provisions of said chapter 13, title 4, of the Civil Code of Idaho, and that the books and accounts of said bank were being falsified, which should have caused him to deem it necessary to visit and make a complete report and examination of its affairs, but, nevertheless, he failed, neglected and omitted so to do."

It is also alleged in said complaint that if said Cruse had at least once in each year and when he had cause to deem it necessary, made an examination of said bank, he would have found that it had been and was then guilty of violating each and every duty and requirement prescribed by our banking laws, and would have found that the books were then falsified in many items and accounts, these items being specifically enumerated, and that he would have then and there found reasonable cause to consider said bank insolvent; that when he had found such a condition, which he would have found had he made an examination, it would have been obligatory upon him in the discharge of his duties to have closed said bank and applied immediately in his official capacity for the appointment of a receiver of said bank; that by reason of the failure of said Cruse to faithfully and impartially discharge his duties, certain depositors, for whose benefit this action was brought, who had deposited certain sums in said bank subsequent to May 12, 1910, suffered loss and damage in certain specified amounts by reason of the failure, neglect and omission of said Cruse to faithfully and impartially discharge the duties of his office. Then followed the usual allegations of ownership of the amount in controversy, and the demand, and that the sums had not been paid, that no dividends had been declared by any of the receivers of said bank, and that the different amounts due said depositors had been wholly lost to them.

There are forty-seven separate and distinct causes of action stated in said complaint, and each cause of action is for an amount less than $2,000.

The record in this case shows that the defendant before its time for appearance had expired in the lower court, filed a petition and bond for the removal of said cause to the United States district court, but did not file any demurrer or appearance in the state court therewith, or within the statutory time allowed to plead in said court; that the time for appearance in the state court expired on October 14, 1912; that on October 7th plaintiff was served with notice of a motion for removal and in said notice the plaintiff was notified that the

defendant would, on October 14, 1912, at 1:30 P. M., at the courthouse in Hailey, move for an order of removal of said cause to the United States district court of Idaho. In response to said notice, counsel for plaintiff went from Boise to Hailey to appear on the day designated in said notice, to protest against and oppose an order for said removal. At the time noted, to wit, 1:30 P. M., of October 14th, counsel for plaintiff appeared before the district court at Hailey, Idaho. No one appeared on behalf of defendant, and the hearing upon defendant's motion was continued at the request of counsel for plaintiff until the following 'ny at 1:30 P. M., for the purpose of giving counsel for defendant an opportunity to be present at said hearing. Counsel for plaintiff again appeared in said court at the time fixed for hearing said motion on that day, but no one appeared therein for the defendant. The court then heard counsel for plaintiff, and being of the opinion that the cause was not removable, it made an order denying the removal, a part of which order is as follows: "It is hereby ordered that the said petition and application on behalf of said defendant be, and the same is, hereby denied. Upon request of counsel for plaintiff, it is further ordered that this court, upon proper showing, will again hear the matter on a motion of defendant to vacate and set aside the order herein made, if said motion be made within proper time."

It thus appears that the plaintiff could have had default in said case entered on October 15, 1912, because no appearance had been made by answer, demurrer or otherwise, in said court at that time by the defendant. On October 16th, no appearance by the defendant having been made, plaintiff filed a *praecipe* for default which was duly entered by the clerk of said court, and thereupon judgment of default was entered by said clerk. On October 17th, three days after plaintiff was noticed for the hearing on removal, counsel for defendant telegraphed or telephoned requesting a hearing to set aside the order of the court theretofore made denying the removal of said cause, which request was granted. The matter was thereafter duly argued by respective counsel and at the close

thereof counsel for plaintiff, in the presence of counsel for defendant, stated in open court that a default had already been entered by the clerk in said case.

The court on October 30th refused to alter its former order of October 15th or to set the same aside, and an order to this effect was thereafter duly entered. The defendant then proceeded on October 28th and filed its record of removal of said cause in the United States district court. The plaintiff thereupon moved to remand to the state court, which motion was granted by the United States district court, and an order to that effect transmitted and filed in said federal court on December 10, 1912. On December 10, 1912, after the United States court had remanded said cause and after the state court had refused to set aside the default therein, and fifty-seven days after its time had expired to appear in the state court, being ninety-seven days after defendant was served, for the first time it entered its appearance in the state court by filing a demurrer. On December 10, 1912, the defendant, besides going on with its removal proceedings in the United States district court, filed a motion in the state court to set aside said default. A hearing was had on said motion on November 9, 1912, and the court on December 11th refused to set aside the default of the clerk, but granted the motion of defendant to set aside the judgment on said default entered by the clerk. On December 12, 1912, the defendant filed a renewal of said motion in the state court to set aside said default. Objections to a hearing of the renewal motion were filed by plaintiff, but were overruled by the court and a full hearing granted. Upon this hearing, all of the grounds urged by defendant were fully presented and considered by the court, and another order was thereafter entered by it, denying the renewal motion to set aside said default.

On May 20, 1913, during the next term of the state court, a hearing was had for the purpose of having the court assess the damages in said case. Proofs were submitted over the objection of counsel for the defendant who was present, and the damages were assessed by the court on each cause of action

and judgment entered, and from that judgment this appeal was taken.

Appellant assigns the following errors: (1) That the court erred in not holding and deciding that, appellant having filed a petition for removal of the cause to the federal court and given the required bond and notice, the time for defendant to plead was extended until the cause was remanded to the state court; (2) That the court erred in refusing to vacate or set aside the simple default entered against appellant by the clerk of the court on October 16, 1912; (3) That the court erred in not making an order transferring the cause to the federal court; (4) That the court erred in entering any judgment against appellant; and (5) That the court erred in not dismissing the action at plaintiff's costs, because the complaint did not state facts sufficient to constitute a cause of action against the defendant.

These assignments of alleged error are so related that they may be considered under three heads, viz.: (1) Error of the court in refusing an order of removal of the cause to the federal court, and error of the clerk in entering the default against defendant; (2) Error of the court in refusing to set aside said default; and (3) Error of the court in holding that the complaint stated a cause of action.

The alleged error of the court as to refusing the order of removal and alleged error in regard to the entering of default against defendant by the clerk of the court may be considered together. The record shows that the default was taken after the expiration of the statutory time to plead had expired. But counsel for appellant contend that the default was prematurely taken because of the removal proceedings in the state court; that the filing of the petition and bond for removal of the cause to the United States court constituted a legal appearance in said action in the state court; that when the state court entered an order refusing to grant the removal, it should have ordered that the defendant plead further within the time fixed by said court, or, in other words, that the rule *respondeat ouster* obtained, and that the filing of said petition and bond for removal suspended the juris-

diction of the state court until the cause had been remanded to said court, and therefore the default entered by the clerk of said court was null and void because it was entered between the filing of the petition for removal and the order of the federal court remanding the cause.

The above contentions of appellant are without merit for the reason that the filing of the petition for removal and the bond is not an appearance in the state court, and does not extend the time to appear therein. The defendant might have demurred or answered at the time it filed its petition for removal, which is the usual practice, without prejudice to its petition for removal, and it would have waived no right by doing so.

These points were distinctly in issue in the case of *Morbeck v. Bradford-Kennedy Co.*, 19 Ida. 83, 113 Pac. 89, and after full consideration it was in that case held as above set forth, and the court there laid down the correct rule. Not having made any appearance in the state court within the time required by our statute, the entry of default by the clerk was within the scope of his authority. (*Morbeck v. Bradford-Kennedy Co., supra.*)

The contention of appellant that the filing of the petition and bond on removal was an appearance, and that the default was prematurely entered, is also without merit. The rule of *respondeat ouster* does not apply in such cases. If the state court had signed an order for removal and thereby voluntarily relinquished its jurisdiction, appellant might with some force claim that a default entered between the time of the filing of the order granting a removal and the filing of the order of the federal court remanding the cause was entered by the clerk without authority.

In this respect there is a marked difference between the case at bar and the Morbeck-Kennedy case. In that case the state court voluntarily relinquished its jurisdiction for a time by signing an order for the removal, while in the case at bar the state court considered the matter and refused to relinquish its jurisdiction, entered an order refusing a removal and thereby claimed and retained its jurisdiction. This dif-

ference makes the reason stronger in favor of sustaining the default herein than it was in that case, since in the case at bar there was at no time a break in the jurisdiction of the state court. The trial court all the time had jurisdiction of this action; it refused to surrender such jurisdiction; it acted consistently throughout, and all of its proceedings were valid. The rule is well settled that if an action is removable and a proper petition and bond filed for removal, it makes no difference whether the state court signs an order removing the cause or refusing to remove it. In fact, no order whatever is necessary or required by the federal law, but the defendant can proceed and file his record for removal to the federal court within the required time and the state court cannot legally proceed further in the matter, and if it does proceed, all of such proceedings are void in case the cause is removed. On the other hand, if the action is one which the defendant is not entitled to remove, and the state court, as in this case, refuses to relinquish its jurisdiction by ordering a removal, then the defendant acts at his peril if he proceeds with the removal and does not protect himself in the state court, as all proper proceedings in the state court will be regular and valid if the case is remanded. So the contention that the mere filing of a petition and bond on removal, whether the same be a case which the defendant is entitled to remove or not, prevents the state court from proceeding further in the action, is untenable. The contentions of appellant are in conflict with all the state and federal decisions which hold that a state court is not bound to surrender its jurisdiction upon petition for removal until a case has been made which on its face shows that the petitioner has a right to a transfer, and not until such a showing is made is the state court prohibited by the federal statutes from proceeding further in the cause; and if the petition in connection with the pleadings does not show that the cause is removable, the jurisdiction of the state court is not ousted and its subsequent proceedings are valid. (*Phoenix Ins. Co. v. Pechner,* 95 U. S. 183, 24 L. ed. 427; *Amory v. Amory,* 95 U. S. 186, 24 L. ed. 428; *Gregory v. Hartley,* 113 U. S. 742, 5 Sup. Ct.

743, 28 L. ed. 1150; *Stone v. State of South Carolina,* 117
U. S. 430, 6 Sup. Ct. 799, 29 L. ed. 962; *Burlington etc. Ry.
Co. v. Dunn,* 122 U. S. 513, 7 Sup. Ct. 1262, 30 L. ed. 1159;
*Crehore v. Ohio etc. Ry. Co.,* 131 U. S. 240, 9 Sup. Ct. 692,
33 L. ed. 144; *Brown v. Nelson & Co.,* 43 Fed. 614; *Chesapeake
etc. Ry. Co. v. McCabe,* 213 U. S. 207, 29 Sup. Ct. 430, 53 L. ed.
765; *Springer v. Howes,* 69 Fed. 850; *Monroe v. Williamson,*
81 Fed. 977 (984); *Mannington v. Hocking Valley Ry. Co.,*
183 Fed. 133; *Golden v. Northern Pac. Ry. Co.,* 39 Mont. 435,
104 Pac. 549, 18 Ann. Cas. 886, 34 L. R. A., N. S., 1154;
*Debnam v. Southern Bell Tel. Co.,* 126 N. C. 831, 36 S. E. 269,
65 L. R. A. 915; *Chicago etc. Co. v. Brazzell,* 33 Okl. 122, 124
Pac. 40; Dillon on Removal of Causes, sec. 136; Moon on Re-
moval of Causes, sec. 177; Foster's Fed. Prac., sec. 391; 2
Rose's Code of Fed. Prac., sec. 1188 (c and g); 18 Ency. Pl.
& Pr. 388, 351; 39 Cyc. 1305, 1308.)

The federal court having decided that the cause was not
removable, we conclude that the default was not prematurely
entered, and that the clerk had authority to enter the same.
In our opinion, the Morbeck case is conclusive upon the ques-
tion above discussed, to wit, the legality of the default and
the question of the removal of said cause.

Counsel for appellant also contend that the court erred in
refusing to vacate and set aside said default entered by the
clerk.

The appellant based its first motion to set aside the default
on the ground of inadvertence, surprise and excusable neglect.
The excuse offered was that counsel for appellant was of the
opinion that it was not necessary for it to plead, answer or
demur in said cause in the state court, and that it would
have thirty days after duly certified copies of the record had
been filed in the federal court to plead in that court. This
excuse was one of a mistake of law.

In 1 Black on Judgments, sec. 335, it is stated: "When
statutes authorize the vacation of a judgment entered against
a party through his 'mistake,' it is to be understood that they
mean a mistake of fact. Mistake of law—that is, the party's
ignorance of the law, or mistake as to his legal rights or duties

in the premises—will not warrant the setting aside of the judgment.'' And in the case of *Plano Mfg. Co. v. Murphy,* 16 S. D. 380, 102 Am. St. 692, 92 N. W. 1072, it is held: ''Where a defendant suffered a default by reason of his belief that the service of summons made by plaintiff's agent was invalid because not made by an officer, the default was the result of a mistake of law and therefore not ground for setting aside the judgment as procured through defendant's mistake or excusable neglect.''

A motion to renew its motion to vacate said default was thereafter filed by appellant, and a further excuse offered, namely: That there was a uniform practice and custom in said state court that when motions, demurrers and interlocutory matters were ruled on not to take default without inquiry from opposing counsel if he intended to proceed further. This was met by plaintiff with an affidavit of a practicing attorney in said district court to the effect that no such custom or practice prevailed in said district court. But even if this excuse had not been met by a counter-affidavit, we question whether the practice or custom in a state court could be considered by this court. (*Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97.)

It was recited in the renewal motion that it would be based upon the records and files and upon the affidavit filed in the first motion. On said renewal motion the additional excuse of a mistake of fact and the excuse of a mistake of law above referred to were fully argued and considered by the court. The court, on hearing said renewal motion, considered each and every ground of said motion and thereupon overruled the same.

Counsel cites many cases dealing with defaults where the defendant did not appear within the statutory time and some valid excuse for not appearing was offered. These cases were not applicable to one like the case at bar where the defendant did come into court before his time had expired to plead, and attempted to take the wrongful procedure.. In such a case another principle is involved; that is, What are the rights of the plaintiff where the defendant does appear and attempts

to gain what it thinks is an advantage over the plaintiff and a benefit to defendant? In such cases, the defendant becomes an actor; it is aggressive in its own interests and seeks to use its time in an unlawful procedure for its own advantage. It is then that courts considering the rights of both parties hold that the plaintiff cannot be charged with such acts of the defendant, and in dealing with substantial justice will require the defendant to assume the risk and consequences that follow its wrongful and unsuccessful procedure. Under the facts of this case, we hold that the trial court did not err in refusing to set aside said default.

As stating these views and showing that the defendant takes his chances when he attempts to remove a case not removable, and that this question is well settled in this state, see *Finney v. American Bonding Co.*, 13 Ida. 534, 90 Pac. 859, 91 Pac. 318, *Mills v. American Bonding Co.*, 13 Ida. 556, 91 Pac. 381, and *Morbeck v. Bradford-Kennedy Co., supra.* The views of this court on this question are well stated in the Morbeck case, as follows: "It seems to us proper and entirely just to both litigants to hold that when a defendant petitions for the removal of a cause from a state to a federal court, he becomes the actor in that particular, and that he must assume the risk and consequences that follow if he is unsuccessful and in the meanwhile has failed to protect and preserve his right under the state statute and rules of practice prevailing in the state court. . . . . The fact that appellants exhausted a part of their time in a vain endeavor to get out of the state court into the federal court is neither the fault of the law, the courts, nor the adverse party. If they saw fit to exhaust a part of their 'day in court' in an effort to get into another forum and failed, the consequence should justly and properly fall upon them and upon no one else. It should not serve as a means of extending the time allowed them by statute or of delaying the adverse party in getting his case to trial after the question of jurisdiction has been determined."

We will next consider the question whether the complaint is sufficient and states a cause of action. The appellant contends that the complaint is insufficient in the following par-

ticulars: (1) That it is not alleged that the bank commissioner neglected any duty that he owed to plaintiff; (2) that a public officer invested with certain discretionary powers is not liable when acting within the scope of his authority, unless he acts maliciously or wilfully wrong; (3) that the words used in sec. 3001, Rev. Codes, "at least once in each year," refer to a calendar year; (4) that it is not alleged that the damages claimed have been "adjudged against him," the said bank commissioner.

The first question above enumerated involves a construction of sec. 3001, Rev. Codes, which, in part, is as follows: "It shall be the duty of the bank commissioner, when he shall deem it necessary, and at least once in each year, without previous notice, to visit and make complete report and examination of the affairs of each bank falling within the provisions of this chapter." The law seems to be well settled that an individual has no right of action against a public officer for breach of a duty which he owes to the public only, even though such individual is specifically injured thereby. (*Gorman v. Commrs.*, 1 Ida. 655; *Worden v. Witt*, 4 Ida. 404, 95 Am. St. 70, 39 Pac. 1114; *People v. Hoag*, 54 Colo. 542, 131 Pac. 400, 45 L. R. A., N. S., 824; *Miller v. Ouray E. L. & Power Co.*, 18 Colo. App. 131, 70 Pac. 447; *Colo. Paving Co. v. Murphy*, 78 Fed. 28, 23 C. C. A. 631, 37 L. R. A. 630; *Ryus v. Gruble*, 31 Kan. 767, 3 Pac. 518; *State v. Harris*, 89 Ind. 363, 46 Am. Rep. 169; *Moss v. Cummings*, 44 Mich. 359, 6 N. W. 843; *School Dist. No. 80 v. Burress*, 2 Neb. Unof. 554, 89 N. W. 609; *Board v. Bladen*, 113 N. C. 379, 18 S. E. 661; *Lowe v. Guthrie*, 4 Okl. 287, 44 Pac. 198; *Cottam v. Oregon City*, 98 Fed. 570; *South v. Maryland*, 18 How. (U. S.) 396, 15 L. ed. 433.)

But it is equally well settled that if the plaintiff can show that the duty was imposed for his benefit and that the legislature had in mind his protection in passing the act in question, and intended to give him a vested right in the discharge of that duty, then this will give him such an interest as will support an action.

In *State v. Harris*, 89 Ind. 363, 46 Am. Rep. 169, it was held: "In general, a public officer is liable only to the person to whom the particular duty is owing, and the ruling question in all cases of the kind is as to whether the plaintiff shows the breach of a particular duty owing to him." We think the rule is well settled that in cases of this kind the plaintiff must show that he has an interest in the performance of the duty by the public officer, and that the duty was imposed for his benefit. But the above does not imply that the duty was imposed for his sole benefit; it is sufficient if it appears that besides having in mind a public duty, the legislature also has in mind an additional duty to the individual.

In *Moss v. Cummings*, 44 Mich. 359, 6 N. W. 843, it is stated: "The failure to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance."

In *School Dist. No. 80 v. Burress*, 2 Neb. Unof. 554, 89 N. W. 609, on this point it is stated: "On the other hand, though there may also be a duty, or even a primary duty, to the public, if there is in addition a duty to and right in the individual, he may maintain an action." Here, then, the real question is, whether the legislature, in passing sec. 3001, Rev. Codes, had in mind the depositors solely, or in connection with the public, and intended that the duty it was imposing on the bank commissioner to make examination was for the benefit of the depositors, thereby making them interested parties in his performance of such duty. In determining this, and in construing said sec. 3001, we must take into consideration the subject matter with which the legislature was dealing, the language used, and the object and purpose of the law being enacted, and the particular duty in question. The matter of consideration in such a case is well stated in vol. 1, Street's Foundations of Legal Liability, p. 175, quoting from *Atkinson v. Newcastle etc. Waterworks Co.*, as follows: "that the question whether or not the breach of a statutory duty gives a private right of action in any case must always depend

upon the object and language of the particular statute." In reading said sec. 3001 and taking such matters into consideration, as just above referred to, we think it is clear that the legislature in prescribing this particular duty of the bank commissioner had uppermost in its mind the protection of depositors and people dealing with state banks, or at least had in mind a double duty, one owing to the public, and one owing to the depositors; or stating it in still another way, that in the public duty was involved also a duty to depositors as individuals; that the duty of examining state banks was one of the most important elements in our banking law; that the examinations required by law were of particular interest to the depositing public; that the duty prescribed was for the benefit of depositors, although it might not have been for their sole benefit; that it was intended by said sec. 3001 to give the depositors a vested right in the discharge of the duty therein prescribed.

It must be borne in mind that the respondent does not contend that the bank commissioner, under the facts of this case, would be liable to all the depositors of said bank at the time it is alleged he should have closed said bank, by reason of his failure to faithfully perform said duty, or that his surety is a guarantor thereof, but said respondent contends that the depositors who may recover are those that made deposits after the time, May 12, 1910, when said bank commissioner should have closed the bank, that such depositors suffered loss by reason of his unfaithfulness in the performance of a duty, which, if performed, would have prevented their loss, and that the duty violated by him was one which was imposed for their benefit; and that thus being interested parties and intended to be such by the legislature, in the performance of the duty of examination, as prescribed in said sec. 3001, the surety is then liable on its bond for the violation of a duty covered by said bond.

This court has already held in *Palmer v. Pettingill,* 6 Ida. 346, 55 Pac. 653, that where the plaintiff is a party whom the statute was intended to benefit or protect, then the surety is liable. It was also held that "The sureties of an officer

mentioned in sec. 403 of the Revised Statutes [same as 295, Rev. Codes] are liable to any person injured or aggrieved by a wrongful act done by the officer in his official capacity.''

We will now consider the question of the liability of a public officer and his surety for a breach of a discretionary duty. Here we may say that the cases cited by appellant, and in the brief of counsel appearing as *amici curiae* herein, do in the main lay down the correct principle of law applicable to such cases, which is quoted from *Reed v. Conway*, 20 Mo. 43, as follows: ''The doctrine that a ministerial officer, acting in a matter before him with discretionary power, or acting in a matter before him judicially, or as a *quasi* judge, is not responsible to anyone receiving an injury from such act, unless the officer act maliciously and wilfully wrong, is most clearly established and maintained.'' (*Wheeler v. Patterson*, 1 N. H. 88, 8 Am. Dec. 41; *Weaver v. Devendorf*, 3 Denio (N. Y.), 117; *Wilson v. Mayor of New York*, 1 Denio (N. Y.), 595, 43 Am. Dec. 719; *Vanderheyden v. Young*, 11 Johns. (N. Y.) 150; *Jenkins v. Waldron*, 11 Johns. (N. Y.) 114, 6 Am. Dec. 359; *Wilkes v. Dinsman*, 7 How. (U. S.) 89, 12 L. ed. 618; *Gould v. Hammond*, 10 Fed. Cas. No. 5636; 29 Cyc. 1443 et seq.; *United States v. Clark*, 31 Fed. 710; *Kendall v. Stokes*, 3 How. (U. S.) 87, 11 L. ed. 506.)

In the beginning of the discussion on this point, it may be well to divide acts of negligence into two classes, namely: (1) Acts of commission, or positive wrong; and (2) acts of omission, or breach of duty. In other words, the division would be along the lines of affirmative commission and negative omission.

In examining the cases above cited, it will be found that most all of them involve acts of commission, and in alleging a breach of duty by acts of commission, it was charged that the acts were committed maliciously or wilfully. In other cases, however, and especially where the breach alleged was an act of omission, such words were used as ''abuse of discretion,'' ''bad faith,'' ''did not act in good faith,'' ''illegally,'' ''fraudulently,'' ''unlawfully,'' ''wrongfully,'' ''unfaithfully,'' ''knowingly,'' and words of like meaning.

So from all the cases, including the cases where the breaches were acts of commission and acts of omission, the sound rule seems to be that some words beyond the mere allegations of negligence and failure to perform should be alleged, showing intent to act wrongfully, wilfully, maliciously, unfaithfully, or in bad faith, or, in other words, showing evil intent, and then allege such facts as did constitute such intent.

It then follows that it is necessary to examine the complaint herein and determine whether there are sufficient allegations therein to show not only neglect or failure of the public officer to perform a discretionary duty, but also that he clearly abused his discretion to the extent of acting unfaithfully and in bad faith, and with a wilful design not to perform his duty as such officer.

In paragraph 8 of the complaint, as will appear from the copy thereof heretofore set out in this opinion, it is alleged that said William G. Cruse "did not well, faithfully and impartially discharge the duties of his said office," but "on the contrary he wholly failed, neglected, omitted and refused so to do, and acted unfaithfully, improperly and illegally," and then sets forth the particular breach of his duty complained of. The word "unfaithfully" signifies "bad faith." (8 Words & Phrases, 7174.) The word "improperly" implies such conduct as a man of ordinary and reasonable care and prudence would not, under the circumstances, have been guilty of. The word "illegally" means "unlawfully" and "contrary to law."

In the second breach set forth in the complaint, it is further alleged that said Cruse, prior to the time and at the time it is claimed he should have closed said bank, had knowledge of its unsafe condition, that the same was being conducted contrary to the provisions of said chap. 13, title 4, of the Civil Code of Idaho, being our banking law at that time, and that the books and accounts of said bank were being falsified, which should have caused him to deem it necessary to visit and make a complete examination of its affairs. Said allegations of knowledge of such facts were sufficient to show such a condition in said bank as would make it necessary

under sec. 3001 for him to make an examination of said bank, and when taken in connection with the words "wholly failed," "neglected," "unfaithfully," "improperly"·and "illegally," as used in the complaint herein, are sufficient to charge an evil and wrong intent with a wilful design to refrain from performing his duty which would amount to bad faith, if he then, under such circumstances, failed or refused to make an examination of said bank.

Having held that said bank commissioner abused his discretion and acted in bad faith when he did not deem it necessary, and wilfully failed to examine said bank under the circumstances as alleged in the complaint, we now pass to a consideration of the further question as to whether the allegations in the complaint as to the condition he would have found there had he made an examination of the bank on or before May 12, 1910, were sufficient to give him reasonable cause to consider said bank insolvent, and then if so, was he required to close the bank and immediately apply for a receiver?

Sec. 3004, Rev. Codes, treats of the duty of the bank commissioner when it appears that the capital of a bank is reduced by impairment, or otherwise, below the amount required by sec. 2970; and sec. 3005 provides that if the bank commissioner shall find that a bank is violating its charter, or the provisions of the chapter relating to banks, he shall by an order direct the discontinuance of such illegal practices.

Appellant contends that the condition alleged may have been of such a character that it would have justified a notice to the bank, as provided in sec. 3004, or an order to said bank to discontinue such illegal practices, as is provided for in sec. 3005. But we cannot agree with this contention, as said sec. 3004 and the first part of sec. 3005 deal with conditions which the legislature evidently did not consider as reaching insolvency.

In the next part of said sec. 3005, following the above, the legislature dealt with a condition of insolvency and provided a remedy where the bank commissioner has reasonable

cause to consider a bank insolvent. This part of said sec. 3005 referred to, is as follows:

"If such bank shall refuse or neglect to comply with such order, or whenever such commissioner has reasonable cause to consider such bank insolvent, he may immediately apply, in his official capacity, to the district court of the county in which such bank has its principal place of business, for the appointment of a receiver for such bank, who, if he be appointed, shall proceed to administer the assets of the bank in accordance with law."

Here, again, in so far as the matter of the bank commissioner having reasonable cause to consider a bank insolvent is concerned, we have to deal with what may be termed another discretionary duty of the commissioner, and the general rules as hereinbefore discussed would apply. We must, therefore, in considering this question, again go to the complaint to see what the allegations are as to what condition the bank commissioner would have found if he had made an examination on or before May 12, 1910.

In paragraph 9 of the complaint, it is alleged as follows:

"That if said William G. Cruse had, at least once in each year, after his examination of May 12, 1909, or on or about the 12th day of May, 1910, when he had cause to deem it necessary to make an examination of the affairs of said bank, as aforesaid, visited said bank and made a. complete report and examination thereof, as was his duty so to do, as aforesaid, he would have found that said bank had been, and was then, guilty of violating each and every duty and requirement prescribed in the provisions of the different sections of said chapter 13, title 4, and would have further found that the books of said bank had been, and were then, falsified in respect to accounts and items of Loans and Discounts, Overdrafts, Bonds and Warrants, due to and from Bank and Bank Accounts, Cash on Hand, Surplus Funds, Undivided Profits, Individual Deposits, Time Certificates of Deposit, Accounts of Officers and Directors and their liabilities, so as to make a proper legal report under date of April 27, 1910, which had been called for a short time prior thereto by said William

G. Cruse, as such Bank Commissioner, in accordance with law, and said William G. Cruse, from an examination of said bank, at said time, would then and there had reasonable cause to consider said bank insolvent.''

If the bank was in fact violating ''each and every'' provision of the banking law, it would indeed be a serious matter and would call for immediate action by the bank commissioner; and we must take it as true that this condition of the bank as alleged in said paragraph of the complaint was true, because in passing upon the sufficiency of the complaint such would be the rule. And further, if the bank, besides violating ''each and every'' provision of the banking law, was also falsifying almost, if not all, of the principal items and accounts, it would be still more serious and require immediate and drastic action by the commissioner; and following these charges, it is alleged that said William G. Cruse from an examination of said bank at said time would then and there have had reasonable cause to consider said bank insolvent.

These allegations present a condition which should have caused him to consider the bank insolvent. Such being the case, what was his duty? It clearly was to adopt the only remedy given him under the law, and close the bank and apply for the appointment of a receiver. And if he failed so to do, then it would be a clear abuse of his discretion, and under such facts and circumstances as alleged, would amount to bad faith and show a wilful design not to perform his duty.

The argument that the word ''may'' in said section 3005 is not mandatory and does not mean ''must'' is without force under such allegations as are contained in this complaint. When such conditions arose under the old banking law, under which this action is brought, in a bank of this state, as alleged in the complaint herein, then the word ''may'' should be construed to mean ''must,'' otherwise the power of the bank commissioner would have been absolute and there would be no such thing as an abuse of discretion, or of holding him liable for bad faith and corruption.

This court has already in effect held in *Blomquist v. Board of County Commissioners*, 25 Ida. 293, 137 Pac. 177, that cer-

tain duties of the assessors involved the exercise of their legal discretion or individual judgment, but that such legal discretion must be exercised in good faith, and if not, then an officer who fails to perform his duty is liable for such failure to faithfully perform his duties. In that case the court says: "If an officer exercises his legal discretion in good faith and without fraud, then he is performing his duty under the law, otherwise not; and if not, then he fails to perform his duty and is liable for a failure to faithfully perform his duties."

The next question for consideration is, whether the words "at least once in each year" as used in sec. 3001, Rev. Codes, refer to a calendar year. The complaint in paragraph 8 alleges two breaches of duty under sec. 3001 as to examination by the bank commissioner: (1) That said W. G. Cruse did not, at least once in each year, make an examination of said bank, and that his last examination before the bank was closed on August 31, 1910, was made on May 12, 1909; and (2) that on or before the 12th day of May, 1910, said Cruse had knowledge of the unsafe condition of said bank, its violation of the banking law, and its falsification of the books, and other acts of said bank, as hereinbefore more particularly set forth. We have already discussed the second breach set out in paragraph 8 of the complaint, and held that the facts alleged in regard thereto were sufficient to constitute a breach of the duty of the bank commissioner under sec. 3001, wherein it is provided that it shall be the duty of the bank commissioner, when he shall deem it necessary, to make an examination of state banks. From the conclusion we there reached, it follows that a cause of action is stated in the complaint regardless of the first breach of duty by said commissioner alleged in said paragraph. It is, therefore, unnecessary to discuss or consider the breach of duty first alleged in said paragraph to determine whether or not the phrase "at least once in each year" means a calendar year or once in twelve months.

There still remains for consideration the question as to whether or not in this action it was necessary that the damages claimed should be first adjudged against the bank commis-

sioner. Sec. 191, Rev. Codes, provides that the bank commissioner shall execute a bond with three conditions, as follows: (1) That he shall faithfully and impartially discharge the duties of his office; (2) pay over to the persons entitled by law to receive it all money coming into his hands by virtue of his office; and (3) conditioned further for the payment of all damages and costs that may be adjudged against him under the provisions of title 2, chap. 13 of the Political Code, and under title 4, chap. 13 of the Civil Code.

The legislature intended by the enactment of said sec. 191 to require a bond covering the faithful and impartial discharge of the duties of said office as a distinct subject matter or condition of the bond; and it next intended to require the bond to cover the paying over of all moneys coming into the hands of the commissioner, as a second distinct subject matter or condition; and, lastly, having in mind that in sec. 3005, Rev. Codes, it had provided that where the commissioner had proceeded maliciously or without reasonable cause in closing a bank and having a receiver appointed, he was liable to such bank on his official bond for any damages, expenses and costs resulting therefrom. The legislature further intended to require a bond covering such damages and costs specifically mentioned in said section 3005, or in any other section of said chapter, and did not intend anyone injured or aggrieved by the failure of the commissioner to faithfully perform his duties, to first proceed and have his damages adjudged against the bank commissioner before he could bring suit against the sureties on said bond. Said three conditions required are separate and distinct. The first words "and conditioned further" imply that it is an additional condition to the two former conditions.

We do not in this decision, in passing upon said third condition, hold that even in a cause brought thereunder, that the injured party would be required to have his damage first adjudged against the bank commissioner before proceeding against his sureties. We reserve a decision on this question until it is properly before us. Under the bond in question, the principal and surety are jointly and severally liable, and

an action on said bond might be brought jointly against said bank commissioner and his sureties, or might have been brought against either of them severally.

We do not consider that the other questions presented in the brief of *amici curiae,* not raised by appellant and not dealing with the sufficiency of the complaint, are properly before us, and we will, therefore, not pass upon these questions further than to state that from our examination of the same, the points are not well taken when applied to this case.

The judgment of the court below must therefore be affirmed, and it is so ordered, with costs in favor of respondent.

Budge, J., and Guheen, District Judge, concur.

(February 4, 1915.)

### ON PETITION FOR REHEARING.

GUHEEN, District Judge.—A petition for rehearing has been filed by counsel for the appellant in the above-entitled action.

The court, after carefully considering the same, finds that all of the material questions discussed by the learned counsel for the appellant in his petition for rehearing were fully covered in the briefs and oral arguments upon the original hearing of said cause, and upon a re-examination of the entire record, we are fully satisfied that we understood the facts and applied the law to the particular facts in this case; that the decision of this court was correct and in harmony with the decisions of this court as heretofore announced.

The petition for rehearing is denied.

Budge, J., concurs.